UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| KRISHNA B. SIMS, | : | Case No. 3:20-cv-195 |
|     Plaintiff, | : : | |
| vs. | : : : | Magistrate Judge Peter B. Silvain, Jr. (by full consent of the parties) |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : : : | |
|     Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Krishna B. Sims brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #12), the Commissioner's Memorandum in Opposition (Doc. #13), and the administrative record (Doc. #10).

**I.**     **Background**

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

In the present case, Plaintiff applied for benefits on July 11, 2016, alleging disability due to several impairments, including an annular tear of the lumbar disc, lumbar facet arthropathy,

lumbar spondylosis paresthesia of the left arm, cervical radiculitis, post-laminectomy syndrome, spinal osteophytosis, depression, and anxiety. After Plaintiff's applications were denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Gregory Kenyon. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. §§ 404.1520, 416.920.[1] He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since May 23, 2016

Step 2: She has the severe impairments of cervical degenerative disc disease with associated residuals of cervical fusion surgery, lumbar degenerative disc disease, depression, and an anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work… subject to the following limitations: (1) occasionally crouching, crawling, kneeling, stooping, balancing, and climbing ramps and stairs; (2) never climbing ladders, ropes, or scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) occasionally using the upper extremities for pushing and pulling; (5) frequently using the upper extremities for handling and fingering; (6) occasionally using the upper extremities for overhead reaching; (7) performing unskilled, simple, repetitive tasks; (8) occasional, superficial contact with coworkers and supervisors (superficial is defined as retaining the ability to receive simple instructions, ask simple questions, and receive performance appraisals but as lacking the ability to engage in more complex social interactions such as persuading other people or rendering advice); (9) no public contact; (10) no fast-paced production work or jobs which involve strict production quotas; and, (11) performing jobs which involve very little, if any, change in the job duties or the work routine from one day to the next."

She is unable to perform any of her past relevant work.

---

[1] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

  Step 5:  She could perform a significant number of jobs that exist in the national economy.

(Doc. #10-2, *PageID* #s 94-106). Based on these findings, the ALJ concluded that Plaintiff was not under a benefits-qualifying disability. *Id.* at 107.

  The evidence of record is adequately summarized in the ALJ's decision (Doc. #10-2, *PageID* #s 94-106), Plaintiff's Statement of Errors (Doc. #12), and the Commissioner's Memorandum in Opposition (Doc. #13). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

  Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

  The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**III.     Discussion**

In her Statement of Errors, Plaintiff raises a single assignment of error, which is that the ALJ failed to "fully consider essential vocational expert testimony finding [Plaintiff] to have functional capacity to perform sedentary work." (Doc. #12, *PageID* #1739). According to Plaintiff, ALJ Kenyon erred by failing to consider the vocational expert's testimony on absences and off-task behavior when finding that Plaintiff would be able to perform sedentary work. *Id*. at 1739-44. In response, the Commissioner points out that the ALJ's formulated residual functional capacity (RFC) was more restrictive than any medical opinion of record and that his decision to exclude the work-preclusive limitations included in the hypothetical posed by Plaintiff's attorney is supported by substantial evidence. (Doc. #13, *PageID* #s 1748-63).

During the hearing, ALJ Kenyon posed a series of hypotheticals to the vocational expert about the availability of jobs in the national economy for an individual with certain hypothetical limitations. (Doc. #10-2, *PageID* #s 147-49). In the first three hypotheticals posed by the ALJ, the vocational expert was able to identify at least 60,000 jobs that would be available in the national economy for an individual with the specified limitations. *Id.* On examination by Plaintiff's counsel, the vocational expert was asked about additional hypothetical limitations, including the tolerance for off-task behavior and absenteeism. *Id*. at 149-50. In response, the vocational expert indicated that, in addition to two daily breaks, any off-task behavior exceeding five percent would be work-preclusive. *Id*. Similarly, the vocational expert testified that Plaintiff would not be able to maintain gainful employment if she were absent more than one day a month every month. *Id*. at 150.

In assessing Plaintiff's RFC, ALJ Kenyon ultimately decided not to include either of the hypothetical limitations posed by Plaintiff's attorney. *See id*. at 100. Plaintiff contends that the

4

failure to include these limitations in the RFC constitutes reversible error as she would have been found disabled had these limitations been included. (Doc. #12, *PageID* #s 1739-44).

An individual's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis …." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (July 2, 1996). The ALJ is responsible for assessing an individual's RFC. 20 C.F.R. § 404.1520(a)(4). The ALJ's RFC assessment must be "based on all of the relevant evidence in the case record, including information about the individual's symptoms and any 'medical source statements' -- *i.e.*, opinions about what the individual can still do despite his or her impairment(s) -- submitted by an individual's treating source or other acceptable medical sources." Soc. Sec. R. 96-8p, 1996 WL 374184, *2 (footnote omitted). Furthermore, in assessing a plaintiff's RFC, the ALJ is not required to incorporate every limitation included in the hypothetical questions posed to the vocational expert—rather, the ALJ need only incorporate the limitations he deems credible. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.") (internal citation omitted).

In this case, substantial evidence supports ALJ Kenyon's assessment of Plaintiff's RFC. ALJ Kenyon explained the history of Plaintiff's cervical impairments. (Doc. #10-2, *PageID* #94). He noted that Plaintiff suffered from a fall in March 2016, which initially resulted in neck pain, but then spread to radicular symptoms, back pain, and pain in her extremities. *Id*. at 94-95. ALJ Kenyon thoroughly discussed Plaintiff's medical records for these impairments, including her surgery and post-operative treatment. *Id*.

Furthermore, the administrative record does not contain any medical opinion detailing how these cervical impairments impact Plaintiff's functioning to the point that they would cause her to be off task more than five percent of the day or be regularly absent more than one day a month. Instead, Plaintiff relies on generalities in her medical records and testimony to support her claim that her RFC should have included the work-preclusive restrictions of being off task and absent from work due to her impairments. (Doc. #12, *PageID* #s 1741-44). Specifically, Plaintiff points to her numerous diagnoses and ongoing treatment for her cervical issues, including tears of the lumbar disc, lumbar facet arthropathy, lumbar spondylosis, paresthesia of both arms, cervical radiculitis, post-laminectomy syndrome, and spinal osteophytosis, along with the chronic pain that is associated therewith. *Id.* at 1741-42. Noticeably absent from Plaintiff's argument is the fact that none of the records endorse the work-preclusive restrictions she believes should have been included in her RFC. Indeed, while the record confirms that Plaintiff has been diagnosed and receives regular treatment for her cervical impairments, there is no medical opinion of record stating that these impairments would cause Plaintiff to be off task for more than five percent of the time or regularly miss more than one day of work a month.

In addition to her treatment records, Plaintiff also relies on the opinions of her treating source, Lily Harmon, CNP. (Doc. #12, *PageID* #s 1743-44). Nurse Harmon first submitted an assessment of Plaintiff's physical impairments and capabilities in June 2016. (Doc. #10-7, *PageID* #s 555-56). In her assessment, Nurse Harmon indicated that Plaintiff had the following diagnoses: annular tearing of the lumbar disc, lumbar facet arthropathy, paresthesia of left arm, depressive disorder, and spinal osteophytosis. *Id.* at 555. She also noted that Plaintiff was suffering from severe pain and would not be able to work longer than one hour a day. *Id.* Nurse Harmon further opined that Plaintiff would only be able to sit and stand for thirty minutes at a time, occasionally

6

lift five pounds, but that she could frequently bend. *Id*. She also indicated that Plaintiff could occasionally manipulate her right hand but never manipulate her left hand. *Id*.

Nurse Harmon submitted a second assessment of Plaintiff's physical impairments and capabilities in December 2016. (Doc. #10-8, *PageID* #s 1021-24). In this assessment, Nurse Harmon indicated that Plaintiff suffered from spinal osteophytosis, narrowing of the lumbar spine, neck pain, lumbar facet arthropathy, and degenerative disc disease. *Id*. at 1021. She opined that Plaintiff would be limited to sitting or standing for less than one hour in an eight-hour workday. *Id*. at 1022. She further noted that Plaintiff would be able to lift and carry up to five pounds frequently, but that she would be moderately limited in her ability to push, pull, and bend. *Id*. Nurse Harmon indicated that while Plaintiff would be markedly limited in her ability to reach, she would not be significantly limited in her ability to handle and perform repetitive foot movements. Finally, Nurse Harmon opined that Plaintiff was unemployable. *Id*.

In reviewing Nurse Harmon's opinion, ALJ Kenyon declined to give either of her opinions controlling weight, noting that, as a certified nurse practitioner, she is not an acceptable medical source under the regulations and that her opinions were provided prior to the Plaintiff's "fusion surgery which was largely successful." (Doc. #10-2, *PageID* #102) (citing 20 C.F.R. §§ 404.1513 and 416.913). Here, ALJ Kenyon pointed to Plaintiff's post-operative records showing "stable hardware placement and preserved alignment" along with reports from November 2017 demonstrating Plaintiff's "normal musculoskeletal and neck range of motion, normal reflexes, normal muscle tone, normal coordination, and no cranial nerve deficit." *Id*. (citing Doc. #10-11, *PageID* #1720). As further evidence of Plaintiff's post-operative symptom improvement, ALJ Kenyon cited to a May 2018 examination, which demonstrated that while Plaintiff had "tenderness and a limited range of motion," she did not have any malalignment and her motor strength, tone,

gait, and sensation were normal. *Id*. (citing Doc. #10-11, *PageID* #1495). Plaintiff also displayed intact deep tendon reflexes and sensation and full range of motion in her neck. *Id*. Finally, noting that the "balance of the record [did] not support the significant limitations on [Plaintiff's] physical capacity offered by [Nurse] Harmon," ALJ Kenyon assigned Nurse Harmon's opinion "little weight." *Id*.

Contrary to Plaintiff's contentions, an ALJ is permitted to consider the evidence and treatment an individual received after a medical opinion has been rendered when determining the persuasiveness of that opinion. *See Williams v. Colvin*, No. 1:15CV00829, 2016 WL 1408621, at *20 (N.D. Ohio Apr. 11, 2016) (holding that the ALJ did not err in affording greater weight to a medical expert's opinion and discounting other medical opinions because medical expert had the opportunity to review Plaintiff's entire record and because his opinion was consistent with the record). That is just what ALJ Kenyon did here. He thoroughly reviewed all of the medical evidence of record and found that Nurse Harmon's opinion was not supported by, or consistent with, the more recent evidence of record indicating an improvement in Plaintiff's condition. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 175-76 (6th Cir. 2009) ("Where the opinion of a treating physician is not supported by objective evidence or is inconsistent with the other medical evidence in the record, the Court generally will uphold an ALJ's decision to discount that opinion."); *see also*, 20 C.F.R. § 404.1527(c)(3)-(4) (medical opinions evaluated for supportability and consistency).

Additionally, Plaintiff's reliance on her subjective complaints to support including these limitations in her RFC is unavailing. It is well-settled that an ALJ is not required to accept a plaintiff's subjective complaints but may instead properly consider the credibility of a plaintiff. *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*,

8

127 F.3d 525, 531 (6th Cir. 1997)). If the ALJ's credibility determinations are explained and enjoy substantial support in the record, the Court is without authority to revisit those determinations. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). *See Beavers v. Sec'y. of Health, Educ. and Welfare*, 577 F.2d 383, 386-87 (6th Cir. 1978).

Here, it is notable that none of the subjective complaints cited by Plaintiff actually demonstrate that her impairments would cause the limitations she advocates for. Specifically, in support of her argument, Plaintiff points to her documented reports of ongoing pain and numbness in her extremities, including her testimony that it is extremely difficult to use her hands and fingers to grip and perform tasks, such as taking tops off bottles, buttoning shirts, and putting on earrings. (Doc. #12, *PageID* #1743). Absent from Plaintiff's argument, however, is how the difficulty she has in completing these tasks translates to a finding that she would be off task more than five percent of the time or regularly miss more than one day of work a month.

Further, even if Plaintiff had provided such citations to the record, substantial evidence exists to support ALJ Kenyon's decision not to include those limitations in the RFC. For example, in response to Plaintiff's subjective complaints regarding the severity of her symptoms, ALJ Kenyon noted that her "fusion surgery was largely successful as evidenced by stable hardware placement and preserved alignment as well as physical examination findings of no more than tenderness and some limited range of motion of the back." (Doc. #10-2, *PageID* #105). ALJ Kenyon also pointed out that Plaintiff was able to resume physical activities, such as bowling and walking. *Id.* (citing Doc. #10-11, *PageID* #1649). Hence, ALJ Kenyon carefully considered the totality of the evidence, applied the proper standards, and clearly explained his credibility findings.

In doing so, he did not find Plaintiff's alleged impairments to be wholly uncredible but, rather, he simply found that they did not support the additional hypothetical limitations advocated by Plaintiff. Under these circumstances, this Court is without authority to disturb that finding.

For these reasons, Plaintiff's statement of error is not well taken.

**IT IS THEREFORE ORDERED THAT**:

1. The ALJ's non-disability decision is affirmed; and
2. The case is terminated on the Court's docket.

November 17, 2021            *s/Peter B. Silvain, Jr.*
                                              Peter B. Silvain, Jr.
                                              United States Magistrate Judge